IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Reverend Franklin C. Reaves, | C/A No.: 4:09-820-TLW-SVH |
| Plaintiff, | |
| vs. | |
| Mark Richardson, individually and in his official Capacity as Deputy Sheriff of Marion County; Albert Woodbury, individually and in his official capacity as Deputy Sheriff of Marion County; Bobby L. Crawford, individually and in his official capacity as Deputy Sheriff of Marion County; Tim Harper, individually and as administrator of Marion County; Willie D. Reaves; City of Marion; Town of Sellers, Hybert N. Strickland, individually and in his official capacity, Donna Owens, individually and in her official capacity, | REPORT AND RECOMMENDATION |
| Defendants. | |

Plaintiff, who is proceeding pro se in this action, brought this action pursuant to 42 U.S.C. § 1983 alleging Defendants have violated his constitutional rights. Before the court are the following motions: (1) Motion for Summary Judgment by Defendants Richardson, Woodbury, Nichols, Crawford, Harper, Town of Sellers, Strickland and Owens [Entry #64]; and (2) City of Marion's Motion for Summary Judgment [Entry #65]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motions for summary

judgment are dispositive motions, this Report and Recommendation is entered for review by the district judge.

I.      Factual and Procedural Background

   A.      Factual Background

Richardson is the elected Sheriff of Marion County and Nichols and Crawford are Marion County Sheriff's deputies. Nichols was employed as a process server for the Marion County Sheriff's office ("MCSO") at the time of the events alleged in the complaint. Defendant Woodbury is an MCSO process server. Defendant Harper is the Marion County Administrator. Strickland is the former Marion County director for the South Carolina Department of Social Services ("DSS"). Donna Owens is a staff attorney employed with the DSS Child Support Enforcement Division. The Town of Sellers and the City of Marion are municipalities located in Marion County, South Carolina.

On September 27, 1988, the Marion County Family Court ordered Plaintiff to pay his ex-wife $300.00 per month (plus a 5% ($15.00) service charge) in alimony through the Marion County Clerk of Court. Rhodes Aff. ¶ 4 and exhibits attached. [Entry #64-8 at 7]. Rhodes, as the Clerk of Court, is required under Rule 24 of the South Carolina Family Court Rules ("SCRFC") to conduct periodic reviews of Plaintiff's alimony account and to issue rules to show cause whenever the account is in arrears. Rule 24, SCRFC. Rhodes issued repeated rules to show cause against Plaintiff in an effort to gain his compliance with the family court's orders. Rhodes Aff. ¶¶ 6–8, 11, 15, 17 and attached exhibits. [Entry #64-8].

Because Plaintiff failed to respond to many of the rules to show cause, the Marion County Family Court has issued bench warrants for Plaintiff's arrest at various times, including on June 9, 2005, August 10, 2006, July 24, 2008, and April 30, 2009. *Id.* at ¶¶ 8–10, 14–16. Without exception, those bench warrants: (1) were issued by a family court judge; (2) commanded law enforcement officers, including sheriffs and deputies, to arrest Plaintiff; and (3) referred to alimony, not child support. *See id.*

On December 31, 2008, Plaintiff was arrested pursuant to the July 24, 2008 bench warrant. *Id.* at ¶ 15; *see also* Am. Compl. ¶¶ 27–29. On that date, Nichols and Woodbury saw Plaintiff driving along Highway 76 in Marion County. They were aware that there was an outstanding family bench warrant for Plaintiff's arrest for failure to pay court-ordered alimony, so they notified MCSO Sgt. Crawford of Plaintiff's location. Nichols Aff. ¶ 4; Woodbury Aff. ¶ 3 [Entry #64-2, #64-6]. Crawford responded, stopped Plaintiff, and placed him under arrest. Crawford Aff. ¶ 3 [Entry #64-4]. Plaintiff contends that at the time of his arrest, he was served an unlawful bench warrant. Plaintiff claims that he was not advised of his Miranda rights nor that he was being placed under arrest. Am. Compl. at ¶¶ 31–33. Plaintiff was allowed to secure his vehicle and leave it in the parking lot of a local attorney's office. Crawford Aff. ¶ 5 [Entry #64-4]. According to Defendants, Plaintiff's vehicle was not searched. *Id.* Nichols and Woodbury then transported Plaintiff to the Marion County Detention Center for booking. Id. at ¶ 6.

3

At the time of this arrest, Plaintiff owed $3,465.00 in past due alimony, having not made a support payment since January 24, 2008. Rhodes Aff. ¶ 15. Plaintiff paid the alimony due that day and was released from jail. Rhodes Aff. ¶ 15 [Entry #64-8].

In his Complaint, Plaintiff first alleges that Woodbury unlawfully searched his vehicle while in the Town of Sellers on July 2 or 3, 2008, in violation of his Fourth Amendment rights. Am. Compl. ¶¶ 25–26, 68–71.[1] Additionally, Plaintiff alleges that during his arrest,[2] he was not told he was under arrest or informed of his Miranda rights. Am. Compl. ¶¶ 76–87. Plaintiff asserts causes of action against the City of Marion and Town of Sellers, for violating his constitutional rights by allowing MCSO deputies to undertake law enforcement activities within their corporate limits. Am. Compl. ¶¶ 103–108; Compl. ¶¶ 89–91 [Entry #1]. Plaintiff also sues his ex-wife, Willie D. Reaves, for violating his constitutional rights by collecting alimony. Compl. ¶¶ 100–102. Additionally, Plaintiff claims that Richardson and Mrs. Reaves engaged in a conspiracy to

---

[1] The Amended Complaint filed does not contain pages numbered 17 and 21, and is missing all or parts of causes of action seven, eight, nine, thirteen, fourteen, and fifteen. The court and the defendants are only able to guess as to what these causes action are, in whole or in part, by referring to the original Complaint [Entry #1], which was not served upon Defendants. It is well settled that federal courts performing their duties of construing pro se pleadings are not required to be "mind readers" or "advocates" for pro se litigants. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).

[2] In the "Facts" section of Plaintiff's complaint, Plaintiff alleges facts related to a December 31, 2008 arrest in which he alleges he was never told he was under arrest and did not receive his Miranda rights. Plaintiff mentions a July 24, 2008 arrest, for the first time in Plaintiff's "Second Claim for Relief." The court can only assume that this is a clerical error by Plaintiff, as the record of Plaintiff's arrest on December 31, 2008 was for the July 24, 2008 bench warrant.

violate his constitutional rights with previously-dismissed defendants Vinson and Rhodes. Am. Compl. ¶¶ 113–114. Plaintiff asserts a failure-to-train claim against Richardson. Am. Compl. ¶¶ 115–117. Finally, Plaintiff asserts a claim for infliction of emotional distress in violation of his constitutional rights. Am. Compl. ¶¶ 118–120.

### B.     Procedural Background

Plaintiff filed his complaint in this action on March 31, 2009. On February 16, 2010, the district judge dismissed Plaintiff's claims against defendants Rhodes, Vinson, Young, the Marion County jail, Marion County Sheriff Department, South Carolina DSS, Mayor Luvenia Wright, Mayor Bobby Gerald, and C. Smith. [Entry #64, #65]. The remaining defendants filed motions for summary judgment on November 4, 2010. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' motions [Entry #66]. Plaintiff did not file responses in opposition to Defendants' motions. Having carefully considered the parties' submissions and the record in this case, the court recommends Defendants' motions for summary judgment be granted.

## II.    Discussion

### A.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of

demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.  Analysis

1.  Search of Plaintiff's car

Plaintiff's first cause of action alleges that Woodbury illegally searched his vehicle in July 2008 in the Town of Sellers. In his affidavit, Woodbury attests that he did not search Plaintiff's vehicle. Woodbury Aff. ¶ 6 [Entry #64-2]. According to Woodbury, he is an MCSO process server and his duties do not include searching people or property. *Id*. s Plaintiff bears the burden of proof on this issue and has set forth no evidence demonstrating Woodbury, or anyone else, searched his car. Therefore, the undersigned recommends Defendants be granted summary judgment as to this claim.

2.  Miranda rights

Plaintiff claims Defendants violated his constitutional rights for allegedly failing to advise him that he was under arrest and to provide him the full array of warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966). Plaintiff's allegations fail to set forth a claim because: (1) Plaintiff made no self-incriminating statements which were used against him in a criminal case; and (2) the mere alleged violation of *Miranda* cannot support a § 1983 claim.

An individual's Fifth Amendment right against self-incrimination is violated "only if one has been compelled to be a witness against himself in a criminal case." *Chavez v. Martinez*, 538 U.S. 760, 770 (2003) (plurality opinion); *see also Burrell v. Virginia*, 395 F.3d 508, 513–14 (4th Cir. 2005). Absent the admission of an individual's statements against him in a criminal case, there is no Fifth Amendment violation. *Chavez*, 538 U.S. at

566–70; *see also Burrell*, 395 F.3d at 514 (failure to allege use of statements in trial fails to state a claim "on the *Chavez* plurality's reasoning"). Moreover, "[r]ules designed to safeguard a constitutional right . . . do not extend the scope of the constitutional right itself, just as violations of judicially crafted prophylactic rules do not violate the constitutional rights of any person." *Chavez*, 538 U.S. at 772. The "protective guidelines . . . now commonly known as the Miranda rules" are "not themselves rights protected by the Constitution but [are] instead measures to insure that the [Fifth Amendment] right against compulsory self-incrimination [is] protected." *Michigan v. Tucker*, 417 U.S. 433, 443–44 (1974). Therefore, an officer's "mere failure to read Miranda warnings" does not arise to the level of a constitutional violation and cannot support a claim under § 1983. *Chavez*, 538 U.S. at 772 (and cases cited therein). Therefore, the undersigned recommends Defendants be granted summary judgment on these claims.

       3.      Eighth Amendment claim

Plaintiff alleges his arrest and detention violated his Eighth Amendment rights, with no further explanation. On December 31, 2008, Sgt. Crawford arrested Plaintiff pursuant to a facially-valid bench warrant issued by the Marion County family court on July 24, 2008, and Nichols and Woodbury transported Plaintiff to jail. Based on the sparse allegations regarding this claim in his amended complaint, it appears Plaintiff is attempting to challenge his detention, which is, in effect, a challenge to the validity of the family court's bench warrant. As such, his Eighth Amendment claim is barred by the Rooker-Feldman doctrine. *See Shooting Point, L.L.C. v. W.M. Cumming, Jr.*, 368 F.3d 379, 383 (4th Cir. 2004)

(Rooker-Feldman doctrine precludes federal "review of adjudications of the state's highest court [and] also the decisions of its lower courts."). "The controlling question . . . is whether a party seeks the federal district court to review a state court decision and thus pass upon the merits of that state court decision . . . . If in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render the judgment ineffectual, Rooker-Feldman is implicated." *Jordahl v. Democratic Party*, 122 F.3d 192, 199 (4th Cir. 1997) (internal quotes omitted). As Plaintiff challenges his arrest and detention pursuant to a bench warrant issued by a South Carolina Family Court for failure to pay alimony, the Rooker-Feldman doctrine precludes federal review. Therefore, the undersigned recommends Defendants be granted summary judgment as to this claim.

### 4.     Claims Against the Town of Sellers and City of Marion

Plaintiff claims the Town of Sellers violated his constitutional rights because it allowed a MCSO deputy to enter the town limits to conduct a search of Plaintiff's vehicle. Am. Compl. ¶¶ 103–108; Compl. ¶¶ 89–91. Similarly, Plaintiff claims the City of Marion violated his constitutional rights by allowing the county sheriff's deputy to "stop drivers in the corporate city limits." Am. Compl. ¶ 104.

Federal civil rights liability may not be premised on the doctrine of vicarious liability. *Revene v. Charles County Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Municipalities may be held liable only where it is affirmatively shown that the alleged constitutional violation was directly caused by an

9

official practice, policy, or custom. *Monell*, 436 U.S. at 690–91; *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion) ("municipalities may be held liable under § 1983 only for acts which the municipality itself is actually responsible, 'that is, acts which the municipality has officially sanctioned or ordered'") (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986)).

Here, Plaintiff's claim against the Town of Sellers fails, first, because there is no evidence of a violation of Plaintiff's constitutional rights with regard to the alleged July 2008 search incident. Similarly, Plaintiff's claim against the City of Marion fails because there is no evidence of a constitutional violation in connection with Plaintiff's December 31, 2008 arrest.  Without an underlying constitutional violation, there can be no imposition of municipal liability under § 1983. *See, e.g., Belcher v. Oliver*, 898 F.2d 32, 36 (4th Cir. 1990) ("Because it is clear that there was no constitutional violation we need not reach the question of whether a municipal policy was responsible for the officers' actions") (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam), and *Giancola v. State of W. Va. Dept. of Pub. Safety*, 830 F.2d 547, 550 (4th Cir. 1987)); *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 724 (4th Cir. 1991) (without constitutional injury there can be no supervisory liability).

Additionally, there is no evidence of any official practice, policy, or custom of the Town of Sellers or City of Marion that proximately caused any injury sustained by Plaintiff. By state law, a sheriff's and deputy's territorial jurisdiction extends throughout the entire county, and is not limited by any corporate boundaries. *See* S.C. Code Ann. § 23-13-70

(deputies to patrol entire county). A sheriff and his deputies are not required to notify a municipality prior to conducting activities within the municipality's corporate limits. Richardson Aff. ¶ 4; Brown Aff. ¶ 4 [Entry #64-7, #64-3]. There is no official policy, custom, or practice which the Town of Sellers or City of Marion could implement to overrule a sheriff's statutory right to conduct law enforcement activities throughout the entire county.  For the foregoing reasons, it is recommended that Defendants be granted summary judgment as to this claim.

      5.      Conspiracy claim

Plaintiff claims that Richardson and Mrs. Reaves engaged in a conspiracy with previously-dismissed defendants Vinson and Rhodes to violate his constitutional rights. Am. Compl. ¶¶ 113–114.  Under 42 U.S.C. § 1983 and § 1985, an alleged conspiracy must be pled and proved by concrete facts, not mere conclusory allegations. *Simmons v. Poe*, 47 F.3d 1370, 1376–77 (4th Cir. 1995); *Buschi v. Kirven*, 775 F.2d 1240, 1248 (4th Cir. 1985). In order to establish a federal conspiracy claim under § 1985, Plaintiff must plead and prove a conspiracy of two or more people motivated by discriminatory animus to deprive Plaintiff of equal rights which results in injury as the result of an overt act committed in furtherance of the conspiracy. *Simmons*, 47 F.3d at 1376.

Here, neither Plaintiff's allegations nor the evidence in the record supports any claim for conspiracy. Plaintiff's complaint contains only conclusory allegations, insufficient to survive summary judgment.  Plaintiff fails to allege the necessary elements with sufficient

specificity to support a claim for conspiracy. Therefore, the undersigned recommends Defendants be granted summary judgment be granted on Plaintiff's conspiracy claim.

      6.      Failure-to-Train Claim

Inadequate training may, in "limited circumstances," support a claim under § 1983. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (municipal liability for failure to train). Such liability may be imposed "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact" and only in cases where the failure to train stems from a "'deliberate' or 'conscious' choice by a municipality." *Id*. at 388–89; *see also Semple v. City of Moundsville*, 195 F.3d 708, 713 (4th Cir. 1999). The mere fact that a particular officer may be inadequately trained is an insufficient basis upon which to rest liability. *City of Canton*, 489 U.S. at 390–91. A civil rights plaintiff must identify a particular deficiency in the training program, and prove that the identified deficiency was the affirmative cause of the constitutional injury. *Id.* at 391; *see also Spell v. McDaniel*, 824 F.2d 1380, 1388–90 (4th Cir. 1987), *cert. denied sub nom*, *City of Fayetteville v. Spell*, 484 U.S. 1027 (1988). A plaintiff must also show that, as a result of the alleged, specific deficiency, the specific violation was a "reasonable probability" as opposed to a "mere possibility." *Semple*, 195 F.3d at 713.

Plaintiff's failure-to-train claim against Richardson fails because, first, there is no proof of an underlying constitutional violation, without which there can be no supervisory liability. *See Temkin*, 945 F.2d at 724; *Belcher*, 898 F.2d at 36. Second, there is no evidence that any constitutional injury was proximately caused by any inadequacy in any

MCSO officer's training. Plaintiff's entirely conclusory allegations that his constitutional rights were violated as a result of a failure to train Crawford, Nichols and Woodbury does not satisfy the requirement that Plaintiff identify a "particular deficiency in the training program" and prove "that the identified deficiency was the affirmative cause of the constitutional injury." *City of Canton*, 489 U.S. at 391. Therefore, the undersigned recommends Defendants be granted summary judgment as to this claim.

### 7. Defendants Strickland and Owens

Plaintiff has not expressly asserted any cause of action against Strickland and Owens personally, but he has included them as defendants in this action apparently on the theory that they were somehow responsible for the issuance of the rules to show cause in his domestic case. There is no evidence that either Owens or Strickland was personally involved in any act of which Plaintiff complains. DSS was not a party to any proceeding involving Plaintiff. To the contrary, the only evidence in the record is that the Marion County Clerk of Court, not Owens or Strickland, signed and caused to be issued all rules to show cause against Plaintiff. Rhodes Aff. ¶ 20; Owens Aff. ¶¶ 3–6 [Entry #64-8, #64-5]. Neither Owens nor Strickland entered an appearance or were otherwise involved in Plaintiff's domestic case. Because Plaintiff has set forth no evidence that either Owens or Strickland were personally involved in any act of which Plaintiff complains, the undersigned submits that they are entitled to judgment as a matter of law. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (official must be personally involved in the alleged deprivation before liability may be imposed).

8.  Defendant Harper

Similarly, Plaintiff has named Harper as a defendant asserting only that he, as the Marion County Administrator, is in charge of the Marion County Detention Center where Plaintiff was allegedly deprived of $5.00. Am. Compl. ¶¶ 10, 37, 61-63 [Entry #23]. Harper is entitled to judgment a matter of law. First, there is no allegation that Harper was personally involved in any alleged deprivation. Without such personal involvement, there can be no liability under section 1983. *Vinnedge*, 550 at 928 (official must be personally involved in the constitutional deprivation); *see also Rizzo v. Goode*, 432 U.S. 362, 371 (1976) (misconduct of subordinate must be "affirmatively link[ed]" to the action or inaction of the supervisor). Harper's oversight of the jail and employees of the jail is an insufficient basis on which to rest 42 U.S.C. § 1983 liability. *See Monell*, 436 U.S. at 691–91 & 694 n.58 (no respondeat superior liability); *Revene*, 882 F.2d at 874 (no vicarious liability). Therefore, the undersigned recommends Harper be granted summary judgment as to this claim.

9.  Infliction of Emotional Distress

Plaintiff has also brought a claim for emotional distress. There is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish, and, hence, there is no liability under § 1983 regarding such claims. *See Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir.1985), *cert. denied*, 480 U.S. 916, (1987). Therefore, the undersigned submits that Defendants are entitled to summary judgment on this claim.

10. Claim against Willie D. Reaves

Plaintiff has also brought claims against his ex-wife, Mrs. Reaves, for alleged constitutional deprivations. However, Plaintiff has not alleged that Mrs. Reaves is a state actor. The person being sued under § 1983 "must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." *Debauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999). The complaint contains no allegations that could establish a sufficient nexus to create state action by Mrs. Reaves. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974) (sufficiently close nexus required to establish the action of Defendants may be fairly treated as that of the state itself). The requirement for action under color of state law "excludes from the reach of § 1983 all 'merely private conduct, no matter how discriminatory or wrongful.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citations and quotations omitted). Therefore, the undersigned submits that Plaintiff's claim against Mrs. Reaves must fail.

11. Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly

> established in the law. Second, the manner in which this right applies to the
> actions of the official must also be apparent. Officials are not liable for bad
> guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a constitutional deprivation, Defendants are still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

IV.     Conclusion

For the reasons discussed above, it is recommended that the Motion for Summary Judgment by Defendants Richardson, Woodbury, Nichols, Crawford, Harper, Town of Sellers, Strickland and Owens [Entry #64] and City of Marion's Motion for Summary Judgment [Entry #65] be granted, and this case be dismissed in its entirety.

IT IS SO RECOMMENDED.

*[signed]* Shiva V. Hodges

March 1, 2011  
Florence, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**